**STATE of Minnesota, by Jayne B. KHALIFA, Acting Commissioner, Department of Human Rights, Relator,**

v.

**PARKSHORE ESTATES, INC., Respondent.**

**No. C3-87-761.**

Court of Appeals of Minnesota.

Oct. 13, 1987.
Review Denied Dec. 18, 1987.

Hubert H. Humphrey, III, Atty. Gen., Nancy J. Leppink, Sp. Asst. Atty. Gen., St. Paul, for relator.

Steve G. Heikens, Minneapolis, for respondent.

Heard, considered and decided by HUSPENI, P.J., and FORSBERG and LESLIE, JJ.

## DECISION

FORSBERG, Judge.

The relator Minnesota Department of Human Rights (Department) brought this action alleging that certain rental policies of respondent Parkshore Estates, Inc. constituted discrimination on the basis of familial status in violation of Minn. Stat. § 363.03, subd. 2(1)(a) (1984). Following a hearing, the administrative law judge (ALJ) found a per se violation of the statute. Although his order enjoins Parkshore from refusing to rent to families with children over the age of 3, it allows Parkshore to continue to consider the ages of children in deciding which unit to offer. This appeal followed issuance of a writ of certiorari. We affirm.

## FACTS

The facts of this case are undisputed, and the parties do not challenge the ALJ's findings of fact. Parkshore owns and operates an apartment complex which is "real property" within the definition of Minn. Stat. § 363.01, subd. 12 (1984). The complex consists of six three-story buildings, none of which has been designated as "adult only" pursuant to Minn. Stat. § 363.02, subd. 2(2) (1984), although two could be so designated.

At the hearing it was established that a prospective tenant must fill out a preference card prior to being shown an apartment so that Parkshore's rental agents can determine which apartment meets that prospective tenant's needs. A person still interested in renting is then required to complete a rental application, make a deposit, and sign a lease. Both the preference card and the application require an applicant to indicate whether he or she has children and the ages of those children.

An enforcement officer with the Department made three separate telephone calls to Parkshore. In one, the investigator indicated that he was looking for an apartment for his wife, himself, and his two children, which he told the agent were 4 and 6 years old. He was informed that the children were "too old for us." The agent explained that the complex lacks facilities for older children and that it is surrounded by potential hazards including a deep pond and a marsh or swamp, and a fenced but unguarded swimming pool. The agent then suggested the name of another complex located nearby which might be more appropriate.

In a letter to the Department's attorney, Parkshore clarified its policy as follows:

> Based on representations to existing residents, [Parkshore] regulates the rental of dwelling units which comprise Park Shore Estates in such a manner that

individuals who have minor children over the age of three are rarely permitted to rent these premises.

In another telephone conversation, the investigator was informed that Parkshore was trying to keep families with children in ground floor apartments. Parkshore stated its policy on this issue as follows:

Based on promises to existing tenants and to enhance their quiet enjoyment of the premises, [Parkshore] regulates the rental of dwelling units on the second and third floor of three story buildings which comprise Parkshore Estates in such a manner that individuals who have minor children over the age of three are rarely permitted to occupy these floors.

Based on the evidence presented, the ALJ concluded that "[t]he condition of being a minor domiciled with a parent or guardian was a factor in granting or denying rental of real property at [Parkshore's] apartment complex, in violation of Minn. Stat. § 363.03, subd. 2(1)(a)" and that "[a]dmissions by [Parkshore's] agents that such familial considerations were involved in rental decisions constitute a 'per se' violation of the statute * * *."

The ALJ's order enjoined Parkshore from:

(1) Telling prospective tenants that units in the complex are limited to families with children under the age of three * * * when such prospective tenants are a family unit as defined in Minn. Stat. § 363.01, subd. 31; and

(2) Preventing any such families with such children * * * from applying or filling out preference cards[.]

The order further required Parkshore to instruct its agents to disregard the ages of children except as follows:

(1) [Parkshore] may still designate two of its six buildings as "adults only" as the Department stipulated it could do and restrict families to the other four buildings; and

(2) [Parkshore] may inquire whether parents or guardians intend to share their domicile with ambulatory children and warn such prospective tenants of the hazards to the children's

safety and lack of playground facilities, as long as they make it clear that there are no restrictions; and

(3) [Parkshore] may suggest other facilities nearby that have safer, superior facilities for children; and

(4) If [Parkshore] does not designate two buildings as "adults only", and more than one apartment is available when an eligible family applies for tenancy, [Parkshore's] agents may consider the ages of children in deciding which unit to offer, insofar as it might affect the interests of adjacent tenants[.]

The Department sought reconsideration of the ALJ's order and deletion of paragraph 4 above, contending that it allows "steering" of families with children into particular apartments and creates an additional exception to the Minnesota Human Rights Act. In a memorandum accompanying his order denying the Department's motion for reconsideration, the ALJ reasoned that this paragraph does not discriminate against families and essentially allows age discrimination in housing, which is not prohibited by the Act.

## ISSUE

Did the ALJ commit an error of law by allowing respondent to consider the ages of children in deciding which unit to offer?

## ANALYSIS

■ This court may reverse or modify the decision of an agency if "the substantial rights of the petitioners may have been prejudiced because the administrative finding, inferences, conclusion, or decisions are: * * * [a]ffected by other error of law * * *." Minn. Stat. § 14.69(d) (1984). In reviewing issues of law, we are not bound by the decision of the agency and need not defer to the agency's expertise. *State by McClure v. Sports & Health Club, Inc.*, 370 N.W.2d 844, 854 n. 17 (Minn.1985).

The Minnesota Human Rights Act did not prohibit discrimination in housing on the basis of "familial status" until 1980.

1980 Minn. Laws ch. 531, § 4. The Act currently provides in pertinent part:

Subd. 2. **Real Property.** It is an unfair discriminatory practice:

(1) For an owner, * * * or managing agent of, or other person having the right to sell, rent or lease any real property, or any agent of any of these:

(a) to refuse to sell, rent, or lease or otherwise deny to or withhold from any person or group of persons any real property because of race, color, creed, religion, national origin, sex, marital status, status with regard to public assistance, disability, or familial status[.]

Minn. Stat. § 363.03, subd. 2 (1984).

Apparently recognizing that separation of families from non-families is desirable and necessary in certain circumstances, the legislature also enacted an extensive list of situations to which Minn. Stat. § 363.03, subd. 2 would not apply. Those exemptions include local, state or federal restrictions on the maximum number of occupants per unit; up to one-third of the units in multi-building complexes, if designated adults only; condominiums created prior to April 12, 1980 or after if they were previously "adults-only"; any building where more than 50% of the tenants are elderly; owner-occupied buildings with less than 5 units; certified elderly buildings; "any occupied dwelling unit of up to one-third of the units in a building that is not part of a multi-building complex"; cooperatives; trailer parks with a majority of elderly; and up to one-third of other trailer parks. Minn. Stat. § 363.02, subds. 2, 2a (1984).

▮ The Department argues that the ALJ improperly created another exemption to this list, in that it allows Parkshore to "steer" a family into a particular apartment based on the ages of its children.[1] We disagree. The legislative exceptions permit total exclusion of families in certain situations. Improper creation of an additional exception would have occurred if the ALJ had allowed respondent to refuse to rent to a prospective family for a reason not listed in the Act.

In denying the Department's motion for reconsideration, the ALJ reasoned that its order actually permits *age* discrimination, which is not prohibited by the real property section of the Act. *See* Minn. Stat. § 363.-03, subd. 2 (1984). The Department argues that this analysis must be rejected because of the prospective tenants applying for apartments, only those who have minor children living with them face the risk of being steered into a particular apartment. *See Minnesota Mining and Manufacturing v. State,* 289 N.W.2d 396, 400 (Minn. 1979) ("Since only women face the risk of becoming pregnant, excluding only pregnancy-related disabilities from an otherwise comprehensive income maintenance plan is per se sex discrimination"), *appeal dismissed,* 444 U.S. 1041, 100 S.Ct. 725, 662 L.Ed.2d 726 (1980). We disagree. A landlord is not prohibited from considering the ages of prospective tenants (whether members of a family or a non-family) in determining where to place those prospective tenants. *Cf. Cybyske v. Independent School District No. 196,* 347 N.W.2d 256, 261 (Minn.) (in action by teacher alleging discrimination based on marital status, supreme court concluded that marital status could not be construed to include "political status" of teacher's husband), *cert. denied,* 469 U.S. 933, 105 S.Ct. 330, 83 L.Ed.2d 266 (1984).

### DECISION

The ALJ's decision is affirmed.

---

**1.** Steering of persons on the basis of a protected classification constitutes a violation of the Fair Housing Act, 42 U.S.C.A. §§ 3601–3631 (West 1977). *See United States v. Mitchell,* 580 F.2d 789 (5th Cir.1978). Any analogy of this case with federal law, however, is misplaced because the Fair Housing Act does not prohibit discrimination on the basis of familial status. 42 U.S.C.A. § 3604(a) (West 1977).